25-3553. Okay, our next case on calendar is related to this one. It's Harvey-D versus Leslie 25-3553, and each side will have 15 minutes again. Good morning again, Your Honors. David Shimano again for the H.A.R.A. Creditors. Our prior appeal presented, I think, very straightforward legal binary issues. You're just going to have to come up with a rule. This is a more complicated dispute. I think it would be very helpful if I- Council, I thought the earlier one was more complicated. Perhaps. Well, I defer to the court's judgment. Let me just give the court, make it explicit what is maybe implicit so the court understands really the context of what's going on here. The overwhelming number of bankruptcy cases are Chapter 7 cases in which a private trustee is appointed, and the overwhelming number of Chapter 7 cases are no-asset cases. These trustees are paid from the commission structure, what they realize from assets, but how do they get paid in these no-asset cases? They get paid in these no-asset cases by a fixed fee set by Congress from the filing fee by the debtor. The debtor pays a couple hundred dollars, and a trustee gets assigned, and they get a fixed fee. That was set by Congress in 1994 at $60. To the consternation of the trustee community and constant lobbying, Congress never raised that $60 over the past 30 years. In fact, until this year. This year, it was raised to $120. There was a concern. There's a concern in the bankruptcy community. Well, how are we to get competent people to serve as trustees? And so, a unwritten deal was reached, and this is all explained by Judge Klein in the Scoggins decision. It's all there. A deal was reached between the trustee community, the United States Trustees Office, and many, if not most, bankruptcy judges. And the deal was, hey, trustees, do these unprofitable no-asset cases, and we'll make it up to you in the asset cases. Trust us. Yes, we have all these rules. We have the Section 330 and fee applications and lots of case law saying trustee compensation's got to be scrutinized to protect creditors. Trust us. Do the no-asset cases. We'll make it up to you in the asset cases. We'll let you go to town in the asset cases. Judge Klein calls this the trustee subsidy. And you can only understand the Salgado decision, the Ruiz decision, the KVN decision without, you can't understand them without the context of this trustee subsidy. There was a movement by a number of bankruptcy judges that we have to make sure trustees get fully compensated in these asset cases to make up for the no-asset cases. And therefore, when you read these decisions, you see references to doctrines that purport to limit trustee compensation in asset cases. Rational relationship, extraordinary circumstance, meaningful benefit to creditors. You can't administer a case primarily for the benefit of the trustee and the professionals. You see references to that in these decisions. But when you look at the actual decisions, trustee gets the full compensation. And as we set forth in our brief, we don't have a problem with that in the ordinary case. It doesn't matter, a policy principle, however you want to characterize it. When the trustee is seeking a couple thousand dollars of compensation in a typical routine asset case, don't put the trustee through the wringer. Don't really put a lot of an effort into getting the trustee compensated. But at a certain point, that rule just breaks down. And this case is like a law professor's final exam question to test all of these doctrines. This notion that, yes, in the ordinary case, we're not going to put the trustee through the wringer. The trustee is going to get the maximum compensation. That's the deal. But in this case, we're not talking about a couple thousand dollars. We are talking about an extraordinary case, an extraordinary case. I want to ask about that because it seems to be that to find in favor of what you want to have happen in this case on the trustee compensation side, there's two ways you could do that. You could construe commission and try to figure out what is that word meaning and what was Congress doing by adding that language and making the changes that it made at the time that that was added in. Or you could live with this presumption that seems to be there and play around with this extraordinary circumstances idea. Which one do you think is the better route to go if we were to agree with you that there was a problem here? Let me preface my answer by saying I'm here for a litigant on a very specific fact pattern, the payment from a carve out from a fully encumbered estate. I'm not here to have you write an opinion that governs every single Chapter 7 case. I'm just asking you to address my fact pattern. But to answer your question, we are argument in the briefs is that the correct. Statutory analysis is that when it comes to Chapter 7 trustee compensation, the text is clear. You do not do a lodestar analysis. There is no there's no obligation for the trustee to come and prove that he spent enough hours in the case to justify the fee. That's gone after 2005. A trustee needs to be compensated on a commission. 100% agree. And what Section 330 still governs. Section 330 says it's got to be reasonable. 326 was not changed. It simply says compensation commission is subject to 330 and shall not exceed. So I do not think there is a textual basis to say that there is some type of. Presumption under the bankruptcy code that you get the maximum commission. What I believe, what do you think commission means that you get? The compensation must be awarded as a commission. So, for instance, if the trustee sells a house for $500,000 and pays off a lien and the maximum commission under the structure is $5000, the court has to award and the trustee wants compensation of $5000, the court has to award a commission. All right. There's no need to justify. I worked 25 hours to justify my $5000. Is that $5000 commission reasonable? That's the question in front of the judge. And again, what the judge supposed to conduct that inquiry? I have again, I have no issue, no issue that if the judge says, well, the maximum commission is $5000. I don't see anything unusual here. I'm going to exercise my judgment not to make you file a detailed fee application. Nobody's objecting. I'm going to award you $5000. I have no issue with that. Judges should have the flexibility and discretion and judgment in the ordinary case to conclude that the maximum commission is the reasonable commission. I think that will be, that'll satisfy the result in most cases. So it sounds like you are starting with a presumption that the maximum is the commission. And then you just, I think in answer to Judge Forrest's question, it sounds like you want to go away from extraordinary circumstances and just have some other inquiry, whether that ends up being reasonable. I think, and again, I think Judge Klein and Scoggins really kind of addresses this kind of dilemma. I don't really have a strong feeling. You get to the same result. You get to the same result as long as the bankruptcy judge has the discretion or maybe even more than that, the duty to determine whether or not this is the ordinary case that justifies just defaulting to the maximum commission. As long as the judge has the, in cases where that's not appropriate, there's more scrutiny is required in other cases. I don't really have a strong preference if you start with, well, there's a presumption and then you go to extraordinary circumstance or you don't start with a presumption, but the court has the discretion to give the maximum commission. I don't really think that is kind of dancing on the head of the pen. So I'm trying to figure out, I mean, the word commission, and it's not a defined term in this context, so we give it an ordinary meaning. And ordinarily, a commission is set at the outset. It's not based on how things actually unfolded, right? You go buy a house and you hire a realtor and you pay the, like, you agree what the amount is going to be before you know how long it's going to take you to buy the house. Yeah. So why shouldn't we think of the use of commission in this context that way? And as a matter of just sort of interpretive exercise, why shouldn't we do that? Because that seems to be what that word means. What commission means is you are to be paid based upon a percentage of what runs through your bank account. That's what it means. Now, what is a reasonable compensation, which is required by both Section 330 and 326? That's the debate. What's a reasonable commission? And I guess- I'm seeing this as an after-the-fact analysis of, like, how did things unfold? How complicated was this in terms of setting reasonableness? It's not a sort of at-the-outset judgment call. Right. When a bankruptcy estate hires a real estate broker, the real estate broker files an application and says, my commission will be 5%, and frequently it's approved both under Section 327 and 328A. 328A says the court can approve terms of engagement up front, and if it approves that, it really can't revisit it later. Right? That's embedded in the bankruptcy code dealing with certain types of commissions, but that's not trustee compensation.  Well, if that's Congress. I mean- But Congress used the word commission. It did, but it didn't- but it's still left in the Section 330 application, which is a hindsight analysis. 330 is the governing statute that governs compensation. 326 is simply the limitation. Now, yes, 326 and 330 are integrated because Congress said in 2005, with respect to Chapter 7 trustees, they shall be awarded a commission, right, not a lodestar, and it'll be based on Section 326. I interpret based on 326 to be basically be informed by and governed by Section 326. 326 says this is the maximum commission. So 330A7 does not permit the court to award more than what 326 permits. It allows the court to award what 326 permits, but it also allows the court, in its discretion and judgment, to award a commission that is less than what 326 permits. No, they don't. I mean, what work is commission even doing, if that's true, right? It seems to me that one thing that you could say is that by Congress taking away the factors that used to be the analysis that governed this issue and putting in the word commission, that it was changing the mechanism for how you figure out money going to the trustee. And it's not the sort of lodestar reasonableness, like how much work was this, how much work did you do, how complicated was it, whatever. It's this commission idea, which in every context I can think of except this one, as you're arguing, you do that without knowing all of that, and you just set a percentage. It's sort of blindly, I guess, but you set a percentage, and then you have this backstop in the statute about ultimately it needs to be reasonable, and here's a cap. Your percentage can't be bigger than this, but it is a percentage. So why, I mean, the way you're arguing this, the change that Congress put in here seems to have very little, if any, effect. No, I disagree. What used to happen before 2005 was a trustee would file an application seeking its $5,000 commission, and the judge, not all judges, but most judges would require that trustee to do a fee application, review how many hours the trustee worked on the case, looked at what services it performed, and then based upon that, decided upon an award. And what Congress said is, no, we want you to stop doing that. This is part of the trustee subsidy we agree to. We don't have any issue with. If it's an asset case, in the ordinary case, and there's a $5,000 commission under the 326 formula, there's absolutely no obligation for the trustee to come in and justify, I worked 25 hours on the case. Therefore, that entitles me to $5,000. What all the trustee has to do is say, judge, this is an ordinary case. I sold the $500,000 house. I paid the lien. This is what's left over. This is reasonable. And that should satisfy it under the new rule. Our case is entirely different. Our case is, and I do want to reserve time for rebuttal. Can I just ask, though, you're asking us to create a circuit split in this case, right? No. You don't like how the other circuits have handled this. I disagree. We're not asking the court to create a circuit split. We're asking really the court to follow the Scoggins analysis, which is, okay, let's just take the BAP and the Fourth Circuit, but really the BAP at its word. There's a presumption of reasonableness of the maximum commission. Let's start with that. Let's start with that. But there's all these doctrines that limit it. Rational relationship. But I think the other circuits have used sort of an extraordinary circumstance. Extraordinary circumstance. And so you think it's okay if we just say that? If you, my specific fact pattern, my specific fact pattern, I'm just here to litigate on a specific fact pattern, was the trustee administered a state solely to obtain a carve out from a fully encumbered piece of property. That fact pattern we submit to you as a matter of law is an extraordinary circumstance. And Judge Klein explains why. And so all we're asking you to do is with respect to our case, our case, take this language in the BAP opinions at face value and apply them. Extraordinary circumstance. Meaningful distribution. You can't administer a case primarily for the benefit of the trustee and his professionals. And if you look what the Bankruptcy Court did, even with all these opinions, which I think are figments of the BAP, they're just putting in language just to cover their decisions. I think if you want time for rebuttal, I need to cut you off. Okay. But that's, we're asking you in our specific fact pattern, I can live with an extraordinary circumstance analysis, meaningful distribution analysis. You can't primarily administer a case for the benefit of the trustee. And that is a fine ruling with respect to our fact pattern. Good morning. My name is Carolyn Dye. I'm here representing Mr. Leslie, the Chapter 7 trustee who's here today, as well as his accounting firm, LEA Accountancy. We're going to divide our time. Mr. Shulman is going to take the last five minutes to deal with the Shulman's firm's fees. And I'll cover the other two appellants here, beginning with the trustee's fee. So it's extraordinary to me, an extraordinary circumstance, that Mr. Shimano is here arguing basically, that the carve-out that they agreed to, the sale that his clients agreed to, and the amount available for distribution to anyone in the case other than the secured creditor is somehow the problem in the case. The problem for the appellants is, and the real thrust of this appeal, is they just want more money. That's all they want, is more money. How do they get more money? Well, the only way they could get more money is by contesting how much the professionals and the trustee was paid out of the carve-out. But everyone knew, when they started out and approved the carve-out, how the trustee's fee was going to be calculated as he concedes. It's presumptively reasonable. It's based on a commission. And unless, under the cases that we are following here in the Ninth Circuit, you can find some extraordinary circumstance, that's the number. So he's now saying this should count as an extraordinary circumstance. So why is that wrong? Pardon me? Say that again? Your friend on the other side just said this is an extraordinary circumstance, so why do you disagree? Well, because he's trying to make the amount of the fee itself the extraordinary circumstance. But that's not what the Code says. The Code doesn't say Chapter 7 trustee can only administer assets up to a certain limit, and if you administer assets up to a certain limit, and you make distributions based upon what you receive, there's no maximum on the fee calculation. That's in the Code. So what distinguishes this case from the ordinary $60 case, he says, and the unusual case, isn't about how the bankruptcy judge reviewed the record or the evidence in the record as to what the trustee did or didn't do, whether there was some defect in the administration of the case or some other, you know, benefit that was not provided to creditors by administering the case. What he basically is saying is the only unusual circumstance here is the amount of the fee. But to determine the commission, the amount of the fee, we revert to the statutory language. Well, my problem with your argument is I have a hard time understanding these statutes the way you want me to read them, which is set a commission. It's subject to this other provision that sets the cap. The cap is presumptively reasonable, like you go with the max every time unless there's a good reason not to. But nowhere in the statute does it actually say that. It just says you set a commission, it needs to be reasonable, you can't exceed that amount. So there's nothing there that says you must do the highest. And that's your whole argument is premised on that idea, and I just don't see that in the language. Well, I think you have to begin with the math. That's where you have to start because that's what the calculation is based upon is simply the math. Then, in order to depart from that math, the cases that we follow here in the Ninth Circuit at the BAP level, et cetera, say you have to find something that was, something else is required to reduce that amount. But come back to the point that I'm trying to make because I don't think you're addressing it, which is what in the statutory language is the hook to say that reasonable means maximum allowed. The difference between, the difference when they amended the statute and added this A-7 is that the word commission is different than compensation. Compensation is going to apply, there's some relationship to the services rendered. Commission is, as you pointed out, is simply a mathematical suggestion as to how to calculate a fee. That's what it is. There's nothing in this record, which we have to focus on, what is in this record that shows the bankruptcy judge abused his discretion by allowing the maximum or made an error of law in allowing the maximum. Counsel, what's in the record to justify the, I think it was the 1.8, the maximum amount that the trustee sought to recover? Okay. So you go back to the circumstances of the case. This was a very gnarly case. The judge converted it because he wanted a solution. He appoints a Chapter 7 trustee. The Chapter 7 trustee did what the trustees do. He investigates, figures out that maybe we can make something happen here. There's no certainty it can happen. He negotiates a carve-out. The carve-out is based upon a net proceeds of the sales price, and then we fast forward. The trustee achieves a sale. No one complains about the sale. We get to the fee application hearings, and there's no evidence presented by the appellants that suggests that anything that the trustee did wrong or anything the bankruptcy judge should consider to reduce the fee. But you don't dispute that the bankruptcy court was operating on the premise that, presumptively, I give the max? I think the bankruptcy code was operating on that premise because I think that's what the code requires it to do. Okay. So that's why I keep asking the question of what in the statute tells us that that was the proper premise for the bankruptcy court to start with? Well, how would you harmonize the 326 compensation statutory calculation with the 330 new language? Do you start with the amount of the fee as calculated, as presumptively correct, and then figure out what you did, if there's something that should be done to reduce it? So you're making a pragmatic argument then, it seems, of like the statute set out sort of the outer bounds of a percentage. It gave us no other options to select from, and so we have no other starting point? Like how is the bankruptcy court going to figure out some other starting percentage? Is that a pragmatic point that you're trying to make? I think it's an evidentiary point, not just a pragmatic point. What was the burden to do? Who had the burden here to explain to the bankruptcy judge what else should be done other than awarding the maximum compensation? I don't know if that answers the question, because the code tells us that the bankruptcy court is obligated to provide reasonable compensation, and then it gives some mechanisms and some guardrails for that. But ultimately, it's the bankruptcy court's obligation to come up with something reasonable, right? And we review that generally for abuse of discretion, because we assume, or we give a lot of deference to the bankruptcy court sitting in that role. So I come back to, maybe your argument is just a pragmatic one in terms of like, how is a bankruptcy court going to pick out of the air some sort of percentage other than the one that the statute states? But it's very, that seems to be slightly uncomfortable with how the statute is written. Well, I don't, the statute is written as it's written. What the bankruptcy judge had before it was a record of how litigious the parties were, which drove up the professional fees, that in turn, you know, subtracted from the carve-out amount available for unsecured creditors. The court had nothing that it had observed in its, or that were mentioned in its findings of fact, which were very detailed, about what was wrong with the trustee's administration of the case, or why this was a problem to pay the trustee the statutory fee. In fact, what the bankruptcy court pointed out was, this was baked into the carve-out. Everybody knew at the outset how, based on hypothetical sales prices, the statutory fee was going to be calculated. Yes, it's an unusual fee, but it's not a fee that is required to be reduced simply because of its amount. That's my point. So if, but if we think the commission suggests that a percentage should be set in advance, when you're talking about what's in the record, are you suggesting that like HAR should have said something in advance? Like this is a case where a lower percentage should have been set, and they waived it by not doing that or something? Is that your theory? I mean, it's not, Your Honor, I don't think that's a theory. I think that is what happened. If they had wanted, if in the greater scheme of things, they thought that there was going to be a problem with consummating a sale at some price, which would render an unusual trustee's fee, they could have actually said that, but instead they stipulated to the terms of the carve-out. They agreed subsequently without objection to the sale at the price. So it wasn't until fee hearings that this whole imagined criticism of the trustee's work, which would have been required to reduce the presumptively reasonable fee, was brought up. So there's nothing in this record the bankruptcy court either observed on its own or was provided by the appellants to reduce. I think, unless there are other questions. I have one last question. Okay. I think I've asked it, but I'm going to ask it one more time. Is it practical for a bankruptcy court at the outset to set a percentage of what a trustee should be paid in an asset case? Is that practically possible? As a Chapter 7 trustee, you don't know a lot of things about a case at the beginning. You don't know what the ultimate amount of the claims are going to be. So that's a no? It's a partial no. It's not realistic to expect that the trustee would go into a case like this, which was a litigious quagmire, if you will, without some assurance of being rewarded if successful. That's why the carve-out terms were clearly disclosed, agreed to, and that set the stage for the calculation of the trustee's fee. There was no objection at the time. There was no objection at the sale. It was only when the trustee went up and said, I did my work, can I get paid?  You're over your time. Thank you. I'm sorry. Let's put five minutes on the clock. Thank you. Good morning. May it please the Court. Ryan O'Day of Shulman Bastion, Friedman, Bouie, and O'Day. From my firm standpoint, this seems to be the juxtaposition of two perspectives here. The cynical one is the idiom, no good deed goes unpunished. The optimist is when life gives you lemons, make lemonade. So the good deed or the predicate of the good deed is all of the parties and interests wanted the case converted from a Chapter 11 to a Chapter 7. My client, Sam Leslie, was appointed. And while I'm not here arguing on behalf of Sam Leslie, I'm here to argue on behalf of my firm's fees that were awarded. That predicate fact cannot be forgotten. Moving forward, the lemon. The lemon in this case was an upside-down piece of property that when the trustee took the case was told it was worth over $100 million. As time went on, that lemon got more and more sour. It turns out that it was deeply underwater. The good act. The good act was the fact that the trustee went out and negotiated with a secured creditor to carve out an amount of money that would not otherwise exist but for his efforts. The punishment. Every single thing that happened from the day of carve out forward. If there was a fight to be picked, it was picked by a small group of creditors in that bankruptcy primary of which appellant. Every single thing that could be fought was fought. And who was on the front lines of that battle? My firm. So it is the height of hypocrisy for somebody to come in and say my firm was paid too much. It's a function of your actions. Understanding that litigation is both proactive and reactionary. So going forward from that point in time, the punishment continues today. I'm standing in front of this lectern and the punishment hasn't gone away. Why? The pool of money to my firm hasn't gotten any bigger. The last three years of the time spent in this appeal arguing over something that is non-existent in the law and non-existent in this record is beyond the pale. So going forward then with those high-level predicate facts, what is the standard of review on this case? This is abuse of discretion. Step one, did Judge Zerzolo apply the wrong legal standard? No, he applied 11 USC 330. We then transition into were his findings illogical or not supported by the record? And I'm loathe to use people's words against him, but the attorney in me will. The prior argument of my colleague ended with, look in the record. It's not there. Well, guess what? We put in 977 pages of evidence, detailed time entries showing everything we did organized by category. What did we get in return? Four pages of argument. In your honors, no argument is not evidence. Judge Zerzolo made it very clear. You have not pinpointed to me a single billing entry that was improper or unnecessary. You've given me no evidence to undermine the veracity of the entries that were built. So at the end of the day, Judge Zerzolo approved the fees as he should. So to me, my colleague started his argument off with, this one is more complicated, OK? Complications in the eye of the beholder. The more meandering a path I take you down, the more complicated I can make a very simple matter seem. This is the distance between two points. The straight line is exactly what Judge Zerzolo came to. So unless your honors have any questions for me, I do believe that the punishment should stop. So thank you. Thank you. Let's put a minute on the clock, please, for rebuttal. I'll try not to talk too fast. Regarding this key issue of the timing of the commission, what was most distressing about the lower court ruling, especially the BAP ruling, is if you look at the KVN decision, that's the decision of the BAP that said, we're going to let trustees administer fully encumbered property in exchange for a carve out. It very specifically said, the trustee's commission, the trustee's compensation is not an issue, not to be determined when you approve the carve out. That will be determined as it is normally done at the end of the case when there's fee applications. So you are sticking with the, this is not, even though it's the word commission, we don't do this as an outset analysis. That is correct. That is correct. Compensation is a hind, under the bankruptcy- So if we disagreed with you, I'm going to ask you the pragmatic question. I understand you're here representing a person in a specific set of facts. Set that aside for a second. Is it doable to set a trustee's compensation rate at the outset? It is not. Why not? Because that would be totally inconsistent with section 330 of the bankruptcy code, which provides that all compensation for all professionals, and that covers trustees, is done at the end of the case in a hindsight analysis. That's, you can't, you can't reconcile what you're proposing with section 330. So then we're back to, what does commission even mean? Well, what it means is, again, it's not a lodestar. Your compen, you get, you're entitled to- It's not a lodestar. What is it? It is, you are, you are entitled to a percentage of the assets you realize for the estate and- How does a judge determine the reasonableness of that percentage if it's not based on lodestar? If you're asking Mr. Shimano to answer that question in Mr. Shimano's view, the answer is it is, I think, reconciled with all these cases on their face value. In the ordinary case, where we're talking about a couple thousand dollars, it is perfectly reasonable for a bankruptcy judge to say, I'm just going to, if you want the maximum commission, I'm going to give you the maximum. That's reasonable. But, but, when we are dealing with something different than that ordinary couple thousand dollar case where there's unusual facts, we are going to apply a more thorough analysis. This case, again, it is a fluke that- It's a fluke. Because the, because the section 326 calculates the maximum commission on the, on the total sale price of the property, not the net benefit to the estate. And so, that's fine. That's fine when you're selling a $500,000 piece of property and there's a $300,000 lien. It doesn't work when you sell a $63 million property in advance knowing all you're getting is a $3.75 million carve out. There, as a matter of rational reasoning, really the estate asset we really should be measuring the reasonableness against is the carve out. And that's why I have no problem, no problem giving the trustee a commission in the full amount based upon the carve out. That would still be a six figure number. We don't have any issue with that. And the point is, if you look at the bankruptcy court decision, no reference to meaningful distribution. He said, doesn't matter. Any other questions? We have you over your time, so I think I need to cut you off. Okay, I'll stop. Thank you. Thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, FORREST, TUNG